# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:16-cr-100 (JAM) |
| PIERRE JEUDY, et al., *Defendants*. | |

## ORDER RE PLEA PROCEEDING

In light of defendant Pierre Jeudy's statement at today's guilty plea proceeding that he is not a United States citizen and defendant's counsel's statement that he had not learned of his client's non-citizenship status until this morning and had not thoroughly researched the implications of defendant's guilty plea with respect to defendant's right to remain in the United States in the event of his conviction, the Court continued today's proceeding for purposes of allowing defense counsel to research this issue and for defendant to assess in light of defense counsel's research and advice whether he wishes to enter a plea of guilty in this case. *See Padilla v. Kentucky*, 559 U.S. 356, 367, 369 (2010) (noting that "the weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation" and noting that if the law is "not succinct and straightforward" about what the immigration consequences of the plea will be, then defense counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse consequences," but that "when the deportation consequence is truly clear," then "the duty to give correct advice is equally clear").

Defense counsel's investigation of immigration consequences may not only bear on the advice that defense counsel gives the client (and consequently on the client's decision whether to enter a plea of guilty at all), but it may also bear on the charge to which a defendant chooses to

plead guilty as well as on the admissions that defendant may make in court or by stipulation in a plea agreement. Here, for example, the parties' proposed plea agreement contains a stipulation as to the amount of loss, and it is far from clear that the decision to stipulate to a loss amount was made with knowledge of potential adverse immigration consequences. *See, e.g.*, *Polanco-De Los Angeles v. Holder*, 543 Fed. Appx. 26 (2d Cir. 2013); *Ljutica v. Holder*, 588 F.3d 119, 125–26 (2d Cir. 2009). Defense counsel's investigation of immigration consequences may likewise bear on significant arguments to be advanced by defense counsel at sentencing. *See, e.g.*, *Shu Feng Xia v. United States*, 2015 WL 4486233 (S.D.N.Y. 2015).

In *Padilla v. Kentucky*, the Supreme Court recognized that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." 559 U.S. at 368. The Court trusts that defense counsel will fully investigate and seek to protect defendant's interests to the extent possible with respect to the potential immigration consequences of any guilty plea. *See, e.g.*, Bill Ong Hing, *The Pressure Is On—Criminal Defense Counsel Strategies After* Padilla v. Kentucky, 92 DENV. U.L. REV. 835, 860 (2015) (discussing range of efforts that competent defense counsel should make as including "determining whether the client might actually be a citizen, to seeking a sentence that would fall outside the realm of an aggravated felony, to seeking a plea to an alternative charge that does not involve moral turpitude, [and] to making sure that the sentencing plea or colloquy is silent about certain facts").

It is so ordered.

Dated at New Haven, Connecticut, this 22nd day of July 2016.

      /s/ *Jeffrey Alker Meyer*
      Jeffrey Alker Meyer
      United States District Judge

2